JAHNA LINDEMUTH
ATTORNEY GENERAL
Jessica M. Alloway (AK Bar No. 1205045)
Ashley C. Brown (AK Bar No. 1105022)
Assistant Attorneys General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501
Telephone: 907-269-5100
Facsimile: 907-279-2834
Email:  jessie.alloway@alaska.gov
        ashley.brown@alaska.gov
Attorneys for the State of Alaska

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| STATE OF ALASKA,<br>   Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA;<br>   Defendant. | CIVIL ACTION NO:<br><br><br><br>**COMPLAINT TO QUIET TITLE** |

**INTRODUCTION**

1. The State of Alaska ("State"), through the office of the Attorney General, brings this action to quiet title to state-owned submerged land underlying the Knik River, a navigable river within the boundaries of the State of Alaska.

2. The State brings this action because defendant United States of America ("United States") claims ownership over and has previously tried to convey a real property interest to the submerged land underlying a portion of the Knik River in dispute to Eklutna, Inc. ("Eklutna"). Such action cast a cloud over the State's title.

3. The United States claims ownership of the other lands in dispute via this complaint because of its ownership of lands abutting the Knik River.

4. The United States' claim of ownership is based on administrative decisions issued by the Alaska State Office of the Bureau of Land Management ("BLM") that conclude the disputed portions of the Knik River, as defined below, are not navigable-in-fact.

## JURISDICTION AND VENUE

5. The State brings this action under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, which authorizes a federal district court to adjudicate disputes over the title to real property in which the United States claims an interest. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1346(f) & 2409a.

6. This Court has jurisdiction over this action because the QTA waives sovereign immunity of the Federal government to resolve disputes over the title to real property in which the United States claims an interest.

7. The State satisfied the QTA's 180-day notice of intent to sue requirement. *See* 28 U.S.C. § 2409a(m). By letter dated June 20, 2016, the Office of the Attorney General for the State of Alaska gave notice to the Secretary of the Interior of its intent to file suit with regard to the ownership of the submerged lands at issue in this case. A copy of this Notice of Intent is included as Exhibit 1.

8. This is an action brought by a state and is timely under 28 U.S.C. § 2409a(g).

9. Title 28, United States Code, Section 1346(f) provides that federal district courts have exclusive original jurisdiction over civil actions arising under the QTA.

10. Venue is proper in this Court under 28 U.S.C. § 1391(e) because the lands at issue in this lawsuit are located within the District of Alaska.

11. A case or controversy has arisen over the State's ownership of the submerged lands described in this Complaint and the State's jurisdiction to regulate and control this land.

## PARTIES

12. The Plaintiff State of Alaska is a sovereign state, with a sovereign interest in the management and conservation of the beds of navigable rivers and other navigable waters and submerged lands to which it has title. In bringing this lawsuit, the State of Alaska seeks to confirm and retain its right to manage its own lands and waters, and to remediate and prevent the attendant harm of being deprived of this right.

13. Defendant United States of America is a sovereign nation and claims an interest in certain lands underlying the Knik River, near Palmer, Alaska, as more fully set forth below.

## DESCRIPTION OF THE KNIK RIVER

14. The Knik River originates from the unnamed pro-glacial lake at the toe of the Knik Glacier in Section 8, T. 15 N., R. 5 East, Seward Meridian, and

flows approximately 30 miles to the Knik Arm of the Cook Inlet. (*See* Map Attached as Exhibit 2).

15. The Knik River is a glacial river.

16. This action is to quiet title to the submerged lands and bed up to and including the ordinary high water lines of the right and left banks of the Knik River from its origination at the outlet of the unnamed pro-glacial lake within Section 8, T. 15 N., R. 5 E., Seward Meridian, downstream to where it enters T. 16, N., R. 3 E., Seward Meridian, except for those portions of the river that traverse state-owned uplands as described in paragraph 18. The portions of the Knik River at issue in this complaint are referred to as the "disputed portion of the Knik River." (*See* Map Attached as Exhibit 3).

17. The disputed portion of the Knik River does not include the submerged lands underlying the portion of the Knik River from the center to the ordinary high water line on the north side of the River within Townships 15 and 16 N., R. 5 E., Seward Meridian. (*See* Map Attached as Exhibit 4.) The State's ownership in this land is not disputed as a result of the State's ownership of the uplands.

18. Within this action, the State does not seek to quiet title to any portion of the Knik River downstream of where the river enters T. 16 N., R. 3 E., Seward Meridian. The United States previously found this portion of the Knik

River either navigable-in-fact or tidally influenced. Therefore, the State's ownership is not in dispute.

## ALASKA'S TITLE TO ITS SUBMERGED LANDS

19. The "equal footing doctrine" guarantees to newly-admitted states the same rights enjoyed by the original thirteen states and other previously-admitted states. *Utah v. United States*, 482 U.S. 193, 196 (1987); *Alaska v. Ahtna, Inc.*, 891 F.2d 1401, 1404 (9th Cir. 1989). This includes title ownership to lands underlying navigable waters. *Utah*, 482 U.S. at 196; *Ahtna, Inc.*, 891 F.2d at 1404.

20. In addition to the "equal footing doctrine," the Submerged Lands Act of 1953 vested in the states "title to and ownership of lands beneath navigable waters within the boundaries of respective States." 43 U.S.C. § 1311(a) (2012).[1] Congress expressly applied the Submerged Lands Act of 1953 to Alaska in the Alaska Statehood Act. § 6(m) of the Alaska Statehood Act, 48 U.S.C. note prec. § 21.

21. Moreover, Congress expressly applied the "equal footing doctrine" to the Territory of Alaska through the Alaska Right of Way Act of 1898, 30 Stat.

---

[1] "Lands beneath navigable waters" is defined as:

> all lands within the boundaries of each of the respective States which are covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, or acquired sovereignty over such lands and waters thereafter, up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction.

43 U.S.C. § 1301(a)(1).

*Alaska v. United States*
Complaint  Page 5 of 12

409, codified at 43 U.S.C. §§ 942-1 to 942-9. And the general mining laws make clear that although "the laws of the United States relating to mining claims, mineral locations, and rights incident thereto" were extended to the Territory of Alaska, "[n]o person shall acquire by virtue of [that extension] any title to any land below the line of ordinary high tide or the line of ordinary high-water mark." 30 U.S.C. § 49a.

22. As a result of the above-described statutes and constitutional doctrines, the State generally manages the water columns, shorelands, tidelands, submerged lands, and the resources located within or on such lands and waters.

23. The people of Alaska "have a constitutional right to free access to and use of the navigable or public water of the state," and the "state has full power and control of all of the navigable or public water of the state . . . and . . . holds and controls all navigable or public water in trust for the use of the people of the state." AS 38.05.126(a), (b).

24. Alaska's title to its submerged lands and navigable waters vested at statehood, and Alaska became a state on January 3, 1959. Therefore, unless a pre-statehood withdrawal clearly included the submerged lands and intended to defeat Alaska's statehood title, Alaska retains ownership and management authority of its submerged lands and navigable waters.

25. There is no pre-statehood withdrawal that would defeat Alaska's title to the disputed portion of the Knik River.

## FEDERAL AGENCY DETERMINATIONS OF NAVIGABILITY AND PUPORTED CONVEYANCE

26. In 1984, the Alaska State Office of the Bureau of Land Management ("BLM") issued an administrative decision ("1984 Navigability Determination") that purported to find the portion of the Knik River flowing through Townships 15 and 16 N., R. 5 E., Seward Meridian, non-navigable. The State has selected the uplands to the north of the River in these townships, and BLM has tentatively approved this conveyance. Consequently, even if the portion of the Knik River traveling through this area was non-navigable, the State's ownership of the submerged land from the thread to the ordinary high water line on the north side of the River is not disputed.[2] (*See* Memorandum Attached as Exhibit 5.) BLM's 1984 navigability determination nevertheless casts a cloud on the rights and title of the State of Alaska to the lands underlying the Knik River to the south of the centerline for the portion of the River traveling through the townships described in this paragraph. (*See* Exhibit 5.)

27. BLM's 1984 navigability determination is the agency's final agency action.

---

[2] *See Bentley Family Trust, Bank of Cal. v. Lynx, Enter., Inc.*, 658 P.2d 761, 763 n.3 (Alaska 1983) ("The slough was a nonnavigable waterway subject to the rule that riparian owners along nonnavigable streams own all the land underneath the stream up to the center or thread of the stream."); AS 09.25.040(4) (providing that when a nonnavigable stream is the boundary of a parcel of property, the rights of the grantor to the thread of the stream are included in the conveyance).

*Alaska v. United States*
Complaint                                                                 Page 7 of 12

28. In 1985, BLM issued an administrative decision ("1985 Navigability Determination") that found the Knik River—from its mouth to and through T. 16 N., R. 3 E., Seward Meridian—navigable-in-fact. This decision amended a previous determination in 1980 that the River was non-navigable in T. 16 N., R. 1 E., Seward Meridian. Therefore, the State's ownership of the submerged lands underlying the portion of the Knik River flowing through the area described in this paragraph is not disputed.

29. Based on survey, BLM has found that tidal influence on the Knik River extends at least approximately 1.5 miles upstream of the new Glenn Highway Bridge, located at approximately river mile 0 on Exhibit 2.

30. On April 10, 2002, BLM issued another administrative decision ("2002 Navigability Determination") which purported to find the portion of the Knik River flowing through Townships 15 and 16 N., R. 4 E., Seward Meridian non-navigable.

31. On September 9, 2015, BLM—relying on the 2002 Navigability Determination—issued a decision approving certain lands for conveyance to Eklutna, Inc. ("2015 Conveyance Decision"). The decision addressed all lands selected by Eklutna, Inc. in T. 15 N., R. 4 E, lands lying north and east of the north bank of the Knik River in T. 16 N., R. 4. E.; and all but Sec. 18 in T. 17 N., R. 4 E., Seward Meridian.

32. Eklutna, Inc. ("Eklutna") is an Alaska corporation created under the Alaska Native Claims Settlement Act of December 18, 1971, 43 U.S.C. § 1601, *et. seq.* Eklutna is the Village Corporation for the Native village of Eklutna.

33. BLM indicated that it would adjudicate the remainder of the selected lands in Townships 16 and 17 N., R. 4 E., Seward Meridian, which includes submerged lands of the Knik River, at a later time.

34. The State appealed BLM's 2015 conveyance decision to the Interior Board of Land Appeals to challenge BLM's failure to reserve appropriate public easements necessary to guarantee a full right of public use as access, as required under Section 17(b) of ANCSA, 43 U.S.C. § 1616(b) and 43 C.F.R. § 2650.4-7, and to challenge BLM's location of the ordinary high water mark.

35. On April 11, 2017, the State, Eklutna, and BLM entered into a settlement agreement to resolve the issues raised in the State's appeal to the Interior Board of Land Appeals. That settlement agreement resolved the dispute over public easements. BLM also agreed to issue a modified conveyance decision that excluded certain lands within and adjacent to the disputed portion of the Knik River.

36. BLM will reconsider the portion of its 2015 Conveyance Decision that included a portion of the disputed section of the Knik River. In doing so, BLM may issue a new decision that approves for conveyance lands within the disputed portion of the Knik River.

37. By reason of the foregoing there is a cloud cast on the rights and title to the State of Alaska to its submerged lands underlying the disputed portion of the Knik River.

## NAVIGABILITY OF KNIK RIVER

38. The disputed portion of the Knik River was in its natural and ordinary condition at the time of statehood and remains in its natural and ordinary condition today.

39. The disputed portion of the Knik River was used and/or susceptible of being used in its natural and ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel, including the following specific uses:

    a. In its fluid condition as a highway—floating of logs, use by wooden and skin boats, log and inflatable rafts, power and jet boats, and canoes providing transportation for individuals and supplies, for subsistence and recreational guided and non-guided hunting and fishing activities, for trapping, mining and prospecting, freighting and similar purposes, related to commerce and travel.

    b. Any other additional uses the State proves at trial.

## CLAIM FOR RELIEF

**(Quiet Title for the State against United States pursuant to 28 U.S.C. § 2409a)**

40. Plaintiff realleges the allegations set forth in paragraphs 39 above.

*Alaska v. United States*
Complaint					Page 10 of 12

Case 3:17-cv-00090-HRH   Document 1   Filed 04/19/17   Page 10 of 12

41. Pursuant to 28 U.S.C. § 2409a, the United States is subject to suit to quiet title to real property in which both the State and the United States claim an interest.

42. The disputed portion of the Knik River was navigable-in-fact at the time of statehood, and there were no pre-statehood withdrawals that defeated the State's interest. Therefore title automatically transferred to the State of Alaska pursuant to the equal footing doctrine, the Submerged Lands Act of 1953, and the Alaska Statehood Act.

43. The State is entitled to an order of this Court quieting title to the submerged lands underlying the disputed portion of the Knik River as described herein.

## PRAYER FOR RELIEF

Plaintiff State of Alaska prays as follows:

1. That the Court enter judgment declaring that the disputed portion of the Knik River was navigable-in-fact at the time of statehood and that there were no pre-statehood withdrawals in effect at the time of statehood that defeated the State's interest in the submerged land underlying the disputed portion of the Knik River. As a result, title to the bed of the disputed portion of the Knik River is in the State of Alaska, and that the United States has had no interest in this land since January 3, 1959.

2. That the Plaintiff State of Alaska be awarded costs and attorney's fees.

3. For such further and other relief as the Court may deem just and proper.

DATED April 19, 2017.

JAHNA LINDEMUTH
ATTORNEY GENERAL


By: /s/ Jessica Moats Alloway
Jessica Moats Alloway
Alaska Bar No. 1205045
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5275
Facsimile: (907) 279-2834
Email: jessie.alloway@alaska.gov

/s/ Ashley C. Brown
Ashley C. Brown
AK Bar No. 1105022
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 279-2834
Email: ashley.brown@alaska.gov